**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**STEPHEN TALBOTT, JR., et al.,**[1]

    **Plaintiffs,**

v.                                                              Case No. 3:06cv378/MCR/MD

**LAKEVIEW CENTER, INC.,**

    **Defendant.**

_____/

# O R D E R

    Plaintiffs in this action, all of whom are current or former employees of defendant Lakeview Center, Inc. ("Lakeview" or "defendant"), allege that Lakeview violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") by failing to pay them overtime wages.  Pending before the court are plaintiffs' motion for partial summary judgment and defendant's eight motions for summary judgment or partial summary judgment.  For the reasons that follow, the parties' motions are denied.

**Background**

    Lakeview provides foster care and child protective services under a contract with the Florida Department of Children and Family Services. Talbot, Webb, Roberts, Kirksey, Gray-Bobbitt, and Maroon each worked for Lakeview as a family services counselor, or "FSC." Oakes was employed by Lakeview as a foster home licensing counselor, or "FHLC."

    Family services counselors are charged with protecting the children assigned to them and providing services to families facing allegations of abuse, neglect, and/or abandonment.  The primary goal of a FSC is to prevent future abuse and/or neglect of

---

[1] Plaintiffs Stephen Talbott, Jr. ("Talbott"), Kristin Webb ("Webb"), Sharon Oakes ("Oakes"), Erica Roberts ("Roberts"), Lisa McLellen ("McLellen"), Stacey D. Kirksey ("Kirksey"), Callie Gray-Bobbitt ("Gray-Bobbitt"), Gennifer Geno ("Geno"), and Beth Maroon ("Maroon") initiated this case.  McLellan and Geno have since stipulated to the dismissal of their claims.

children.  The duties and responsibilities of a FSC include responding to and resolving case-related emergencies; case planning; providing support to biological, relative and non-relative caregivers, foster, and/or adoptive families; and assessing risks to children and developing safety plans.[2]  The FSC job description states that the minimum education required for the position is a "[b]achelor's degree from an accredited college or university in social services or related field." Doc. 108-5.  Foster home licensing counselors provide "training, licensing and re-licensing of current and potential foster parents" as well as assist in "recruitment activities for potential foster homes as assigned."  Doc. 110-2.  A FHLC's primary duties include providing and/or coordinating training efforts; developing and completing re-licensing efforts/requirements; providing and/or coordinating on-going training for licensed foster families; assisting with specialized placement needs; and providing guidance and support to assigned foster families.[3]  The job description for a FHLC provides that the minimum training and experience required is a "[b]achelor's degree and one (1) year experience working with children and families in a foster care or case management environment."  Doc. 110-2.

Both the FSC position and the FHLC position requires specialized training.  Each hiree must complete Phase I of the child protection pre-service training program ("Phase I") unless he has previously been certified by the state of Florida as a child protection professional ("CPP").  Phase I is a six-week program that includes classroom and field

---

[2] Other duties include visiting with each assigned child at least once monthly if possible; arranging client transportation; making referrals; obtaining input from service providers; writing and submitting court documents to Child Welfare Legal Services;  testifying in court and depositions; writing studies for specialized placements and home studies; preparing children and their families for placements; entering case notes into the computer system and assuming other recordkeeping duties; networking with community providers; identifying and initiating claims for federal funds; attending mandatory education programs; obtaining and maintaining certification as a child protection professional.

 The court notes that Lakeview has used a number of job descriptions for the FSC position.  See, e.g., doc. 108-5.  Each of these descriptions contains similar lists of the pertinent duties of the FSC position.  See id.

[3] Other duties include completing home studies and licensing information for foster homes; acquiring and maintaining certification in parenting techniques and leading parenting training sessions; participating in quality reviews of licensing records and processes; visiting potential foster families; providing licensing information to foster families and potential foster families; and completing professional certification.

training. After completing Phase I, employees must pass the child protection professional written assessment ("CPPWA"). FSCs and FHLCs must also pass the field-based performance assessment ("FBPA") within one year of their employment. Completing Phase I and passing the CPPWA and FBPA are both prerequisites to being certified as a CPP. In addition, FHLCs are required to acquire and maintain certification in parenting training. Individuals who are hired and have not been certified as CPPs are placed in "trainee" status and on probation for up to one year while completing these mandatory requirements. Continuing education after hiring is mandatory for both positions.

All FSCs and FHLCs are salaried employees who are paid on a bi-weekly basis. In this case, plaintiffs regularly and routinely worked in excess of forty (40) hours per week for Lakeview with, they allege, no additional compensation for the number of overtime hours worked.

**Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "The mere existence of some alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original omitted). A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it may affect the outcome of the case under the applicable substantive law. See id.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the moving party's pleadings. Instead, the nonmoving party must respond by affidavits or otherwise and present specific allegations showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). When assessing the

sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. See Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the nonmoving party.

**Discussion**

Lakeview and plaintiffs have filed cross-motions for summary judgment on the issue of whether plaintiffs are exempt from the overtime pay provisions of the FLSA under the administrative and learned professional exemptions. Lakeview also requests summary judgment as to the combination exception. Both sides additionally seek summary judgment on the issue of whether plaintiffs' claims are barred by the good faith reliance defense found in 29 U.S.C. § 259. Lakeview also asserts that if plaintiffs are not exempt and their claims are not barred, summary judgment should be granted in its favor on plaintiffs' claim for liquidated damages pursuant to 29 U.S.C. § 260 and a two-year statute of limitations bar imposed pursuant to 29 U.S.C. § 255.[4] Finally, Lakeview argues that even if plaintiffs are non-exempt and their claims are not barred, summary judgment should be granted as to the measure of plaintiffs' unpaid overtime wages.

---

[4] The overtime regulations relevant to this matter were significantly revised effective August 23, 2004. The new regulations do not apply retroactively to events occurring prior to that date. Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005). In cases in which employment spans both before and after the effective date of the revisions, courts should apply both sets of regulations. Smith v. Heartland Automotive Services, Inc., 404 F.Supp.2d 1144, 1148, n.2 (D.Minn. 2005).
  As the facts alleged in the first amended complaint show that some plaintiffs worked at Lakeview before August 23, 2004, the old regulations should be applied to events occurring prior to that date and the new regulations should be applied to events occurring after that date. While the parties do not appear to have addressed this issue, the court has reviewed the old regulations and has satisfied itself that the outcome with regard to the issues presented is the same under either version. Thus the following discussion refers to the 2004 regulations only.

**I. FLSA's Overtime Exemptions**

The FLSA was designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). The statute "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." Reich v. New York City Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)). Under the FLSA, subject employers must pay their employees one and one-half times the employee's usual hourly wage for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The parties agree Lakeview is an employer subject to the FLSA.

Employees are exempt from the FLSA's overtime pay requirement if they are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden to prove that a particular exemption applies by "clear and affirmative evidence." Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992). The exemptions are narrowly construed against the employer. See Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004) (citing Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991)). The determination of whether an employee qualifies for one of the exemptions must be made "on the basis of whether the employee's salary and duties meet the requirements [of the applicable exemption:]" the employee's job title alone is not determinative. 29 C.F.R. § 541.2.

As noted above, Lakeview argues that each of the plaintiffs is exempt under both the administrative and learned professional exemptions. In addition, Lakeview argues that all plaintiffs are exempt under the combination exemption recognized in 29 C.F.R. § 541.708.

**A. The Administrative Exemption**

The Fair Labor Standards Act does not specifically define the administrative or learned professional exemptions; rather, the Act gives the Secretary of Labor "broad authority" to define and limit the scope of exemptions in promulgated regulations. Auer v. Robbins, 519 U.S. 452, 456, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997); 29 U.S.C.

§ 213(a)(1). The regulations defining the administrative exemption are set out at 29 C.F.R. § 541.200 et seq. They provide that an exempt administrative employee is one: (1) who is compensated at a rate of not less than $455 per week; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). As the court reads the plain language of this regulation, the defendant must meet all three elements of this test to establish the exemption while plaintiffs may prevail by showing that any one element cannot be established as a matter of law.

Plaintiffs appear to concede the first element of the administrative exemption test and also that part of the second element which requires them to show their primary duties were "office or non-manual work." Thus the court's inquiry focuses on the latter part of the second element, i.e., whether plaintiffs' duties were "directly related to the management or general business operations of the employer or the employer's customers," and the third element, i.e., whether plaintiffs' primary duties "include[ ] the exercise of discretion and independent judgment with respect to matters of significance."

**1. "Directly related to the management or general business operations of the employer or the employer's customers"**

According to the relevant regulation, an employee's duties are "directly related" to general business operations if he performs functions that are involved with "assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). In other words, an administrative employee may be exempt from overtime pay because he "engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002) (quoting Bratt v. County of Los Angeles, 912 F.2d 1066, 1070 (9th Cir. 1990)). The regulations provide examples of work that would ordinarily satisfy the "directly related to " requirement, including "tax; finance;

accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

Lakeview argues that plaintiffs incorrectly seek to resolve the issue of whether they are covered by the administrative exemption by simply applying what is referred to as the "production/administration dichotomy," which provides that the employee who actually performs the work required to produce the employer's goods or services is not exempt, but an employee who administers the production of that good or service may be. See, e.g., Shaw v. Prentice Hall Computer Pub., Inc., 151 F.3d 640, 644 (7th Cir. 1998) (describing the test but noting it may be "no longer . . . helpful" in every context). According to Lakeview, application of the production/administration test short-circuits a proper and full analysis of the issue; moreover, Lakeview contends, the use of this test was deemphasized by the 2004 revision to the regulations. Lakeview's preferred analysis has three steps: first, identification of the employees' primary duties; second, review of the regulations to determine whether the employment would be exempt based on the duties listed there; and finally, only if needed as a "tie-breaker," application of the production/administration test. Lakeview cites Ferrell v. Gwinnett County Bd. of Educ., 481 F.Supp.2d 1338 (N.D.Ga. 2007), in support of this three-step analysis.

The court finds that applying either the three-part analysis discussed in Ferrell or the production/administration test alone yields the same result: the duties of the plaintiffs in this case are not "directly related to the management or general business operations" of Lakeview. With respect to the first and second steps of the test outlined in Ferrell, Lakeview argues that plaintiffs' positions are clearly described in the Department of Labor's regulations and thus the positions are exempt from overtime. Lakeview claims that the plaintiffs' positions involve overseeing the physical security and well-being of Lakeview's foster clients; accordingly, Lakeview maintains, plaintiffs' work is in the field of "safety and health" and therefore falls under the list of functions which are "directly related to [its]

management or general business operations." 29 C.F.R. § 541.201(b). This argument fails. As a preliminary matter, § 541.200(a)(2) provides that the general business operations at issue must belong to the employer,[5] so the focus is only on safety and health at the Lakeview facility itself, not at the foster homes Lakeview oversees. Even if that were not so, when "safety and health" is read in context with the rest of the list cited in § 541.201(b)—"personnel management; human resources; employee benefits" and so on—it is clear that the reference to "safety and health" means functions that constitute a general oversight of the safety and health of the employer's other employees, such as through compliance with OSHA regulations. Lakeview similarly claims that plaintiffs' jobs involve "legal and regulatory compliance." The record does not disclose that plaintiffs are in charge of ensuring Lakeview's overall corporate compliance to a legal or regulatory regime; to the extent that Lakeview implies that a plaintiff is obliged to follow statutes and regulations applicable to his field, that interpretation arguably could require exempting every employee in the nation who works in a regulatory field. Lakeview also seeks to link the plaintiffs' jobs with other investigative positions found to be exempt, but this argument is not persuasive either. Lakeview cites an example discussed in 29 C.F.R. § 541.203(a), which treats insurance claims adjusters as exempt. Lakeview argues that the rationale for this treatment is that claims adjusters ascertain and gather information, then plan action in response. Lakeview reasons that the plaintiffs' jobs require them to perform similar activities and thus that they too should be exempt. Lakeview apparently overlooks that this regulation also requires the claims adjuster to negotiate settlements and make recommendations for litigation—actions which, unlike those in this case, affect the company's bottom line and go beyond the scope of merely collecting data and making recommendations; furthermore, there is no suggestion that the plaintiffs here have the

---

[5] The regulation also provides that the employee's work may be directly related to the general business operations of "the employer's customers." 29 C.F.R. § 541.200(a)(2). The court does not find this provision relevant because even if Lakeview's foster clients are "customers," they do not have "general business operations."

Case No. 3:06cv378/MCR/MD

authority to undertake such actions.[6]

The court therefore concludes that defendant has not shown that plaintiffs' primary duties involve the kind of administrative functions listed in 29 C.F.R. § 541.201(b). Thus, even if the Ferrell three-part test proposed by defendant is applied, the "directly related duties" issue is resolved in plaintiffs' favor at the conclusion of the second step. Having reached this determination, the court need not consider Ferrell's optional tie-breaker, the production/administration dichotomy. Nevertheless, because the Department of Labor considers this test a "relevant and useful tool," the court applies it and finds that plaintiffs clearly are not administrators.[7] Lakeview's output for purposes of the test is the provision of protective services to children and families in need. Plaintiffs are the "line workers" who produce this output. Plainly, they are not responsible for any part of Lakeview's administrative machinery. See 29 C.F.R. § 541.201(a); Bothell, 299 F.3d at 1125. In short, plaintiffs fall "squarely on the 'production' side of the line." Bothell, 299 F.3d at 1127.

As a final matter, the court notes that its conclusion that plaintiffs do not perform work that is directly related to the management or general business operations of Lakeview is consistent with the positions taken in opinion letters issued by the Department of Labor's Wage and Hour Division to employers of similar workers.[8] See Op. Letter from Dept. of

---

[6] The court has reviewed and considered the case law cited by Lakeview, including Hogan v. Allstate Ins. Co., 361 F.3d 621 (11th Cir. 2004), and Stout v. Smolar, 2007 WL 2765519 (N.D.Ga. 2007). Because the work performed by the plaintiffs in the instant case is dissimilar to the work described in these cases, both are factually distinguishable and thus not persuasive.

[7] The Department of Labor takes the view that the production/administration test has not "ever been or should be a dispositive test for exemption." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees ("Preamble"), 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt. 541). The Department has also described the test, however, as "a relevant and useful tool in appropriate cases to identify employees who should be excluded from the exemption." Id. The test is merely "a tool toward answering the ultimate question, whether work is 'directly related to management policies or general business operations,' not . . . an end in itself." Id.

[8] The interpretations of law contained in opinion letters lack the force of law and do not warrant "Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (citations omitted); see Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Such interpretations nevertheless are entitled to respect to the extent they are persuasive. Id. (quotation and citation omitted). In this case, the court notes that Lakeview did not address the findings contained in these opinion letters, even while relying on the November 4, 2005, opinion letter to support its contention that plaintiffs qualify for the learned professional exemption.

Case No. 3:06cv378/MCR/MD

Labor, Wage and Hour Div., FLSA2006-20NA (Sept. 8, 2006), 2006 WL 4512962 (case managers who assessed developmentally disabled clients, identified resources, and coordinated delivery of services); Op. Letter from Dept. of Labor, Wage and Hour Div., FLSA2005-30 (Aug. 29, 2005), 2005 WL 3308601 (advocates for developmentally disabled clients who kept informed of law, investigated and acted upon complaints of abuse or neglect, and prepared documentation and reports).

For all of the foregoing reasons, the court finds that defendant has not met its burden of showing by clear and affirmative evidence that plaintiffs have assumed duties that are directly related to LCI's management or general business operations.

**2. The "exercise of discretion and independent judgment with respect to matters of significance"**

Because defendant has not shown that plaintiffs' duties are directly related to Lakeview's management or general business operations, it is unable to establish that plaintiffs are subject to the administrative exemption; accordingly, the court need not examine the third part of this test, which pertains to whether plaintiffs' duties involve "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a)(3).  Assuming otherwise, arguendo, the court proceeds with its analysis.

The regulations require that administrative work must include "the exercise of discretion and independent judgment with respect to matters of significance." This work is defined as "involv[ing] the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(b). The regulations also provide a non-exhaustive list of factors that should be considered.[9] While the Department of Labor's positions are not binding on this court, it has

---

[9] These regulatory factors include

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior

been noted that courts generally find the administrative exemption is met when at least two or three of the factors are present. Preamble, 69 Fed. Reg. 22122, 22143 (collecting cases). In this case, the court finds that the regulatory factors cited in § 541.202(b) weigh heavily in the favor of plaintiffs not being exempt. A review of these factors demonstrates that the administrative exemption is plainly intended for employees who have a hand in running the business and make major, strategic decisions on its behalf. Plaintiffs simply do not fit this categorization. The court therefore finds that defendant has not shown with clear and affirmative evidence that plaintiffs' duties involve "the exercise of discretion and independent judgment with respect to matters of significance."[10]

In sum, defendant has not met its burden of showing that plaintiffs have assumed duties that are directly related to Lakeview's management or general business operations or that plaintiffs' duties involve the exercise of discretion and independent judgment with respect to matters of significance. The court therefore finds as a matter of law that the administrative exemption set forth in 29 C.F.R. § 541.200 et seq., does not apply to the

---

approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).

Other factors cited as being determinative in federal cases by the Department of Labor include

the employee's freedom from direct supervision, personnel responsibilities, troubleshooting or problem-solving activities on behalf of management, use of personalized communication techniques, authority to handle atypical or unusual situations, authority to set budgets, responsibility for assessing customer needs, primary contact to public or customers on behalf of the employer, the duty to anticipate competitive products or services and distinguish them from competitor's products or services, advertising or promotion work, and coordination of departments, requirements, or other activities for or on behalf of employer or employer's clients or customers.

Preamble, 69 Fed. Reg. 22122, 22144.

[10] In light of this conclusion, the court need not reach plaintiffs' argument that because they should be treated as public-safety employees as defined in 29 C.F.R. 541.3(b)(1) the administrative exemption does not apply to them.

Case No. 3:06cv378/MCR/MD

plaintiffs in this case.

### B. The Learned Professional Exemption

Both parties move for summary judgment on the learned professional exemption, which is defined in the regulations at 29 C.F.R. § 541.300 et seq. Employees making at least $ 455.00 per week qualify for the exemption so long as their primary duties meet one of two classifications: the use of advanced knowledge or the engagement in artistic or creative endeavors. 29 C.F.R. § 541.300(a). Only the advanced knowledge classification is at issue in this case. This exemption applies if an employee's primary duty requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(i). The regulation outlines three elements pertinent to this exemption: "(1) [t]he employee must perform work requiring advanced knowledge; (2) [t]he advanced knowledge must be in a field of science or learning; and (3) [t]he advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction." § 541.301(a).

The learned professional exemption requires an employee to "perform work requiring advanced knowledge." 29 C.F.R. § 541.301(a)(1). This means "work which is predominantly intellectual in character . . . requiring the consistent exercise of discretion and judgment," rather than being routine mental or manual work. § 541.301(b). The advanced knowledge is "generally use[d] . . . to analyze, interpret or make deductions from varying facts or circumstances." Id. The regulations make clear that the advanced knowledge must not merely be held by the employee but it also must be required for the employee to perform the job. § 541.301(a)(1).

Lakeview argues the evidence "overwhelming[ly]" supports a finding that the work performed by plaintiffs requires advanced knowledge because the work demands "the consistent exercise of discretion and judgment" as provided in § 541.301(b). Lakeview points to the fact that plaintiffs observe the home life and school performance of their assigned children, and they formulate the plans and recommendations intended to improve those children's lives. Lakeview notes that plaintiffs' jobs consist of "evaluation, screening, assessment, and judging" what needs to be done to improve the children's family

situations. Lakeview's evidence, and the record generally, show that plaintiffs' work involves a demanding process of assembling facts and histories about the children, making judgments about the suitability of clients' parenting skills, and proposing solutions to improve family life. As evidence that the plaintiffs must consistently exercise judgment to perform their jobs, Lakeview highlights the timesheets submitted by plaintiffs which reflect that about 80% of their time is occupied in activities requiring the use of judgment and discretion. In opposition to Lakeview's motions for summary judgment on this issue, plaintiffs contend that their jobs do not require "advanced knowledge" as set out under § 541.301(b). Plaintiffs note that Lakeview hires employees whose degrees are in fields that are not directly related to their jobs. Plaintiffs also claim that Lakeview taught them all they need to know to perform their jobs in a six-week training course, which they claim is inconsistent with the definition of "advanced knowledge." Finally, plaintiffs assert that Lakeview's practice of maintaining employees in "trainee" status for over a year shows that the job does not require any advanced knowledge.

Each of the parties supports its position with record evidence. Thus, with respect to whether plaintiffs possess "advanced knowledge" within the meaning of the learned professional exemption set forth in 29 C.F.R. § 541.300 et seq., a genuine issue of material fact for trial exists. Summary judgment therefore is not available to either party on the question of whether plaintiffs are subject to the learned professional exemption. Therefore, the parties' cross-motions on this issue are denied.

In light of its finding that summary judgment is precluded, the court need not address the two remaining elements of the learned professional exemption, which are that the employee's advanced knowledge must be in "a field of science or learning" and that the advanced knowledge "must be customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a)(2) and (3). The court notes, however, its impression based on the evidence presented that neither party has satisfied its summary judgment burden with respect to either of the two remaining elements.

### C. The "Combination" Exemption

In addition to the exemptions listed in 29 U.S.C. § 213(a)(1), the regulations

promulgated pursuant to the FLSA recognize that an employee may also be exempt from the FLSA's overtime compensation requirements if the employee's primary duty includes a combination of work that qualifies under two or more of the exemptions listed in § 213. 29 C.F.R. § 541.708. Because of the court's finding that summary judgment in Lakeview's favor is not appropriate for either the administrative or learned professional exemptions, Lakeview's motions for summary judgment as to the application of the combination exemption will also be denied.

## II.    Good Faith Reliance/Liquidated Damages/Statute of Limitations

The court first addresses plaintiffs' assertion in its motion for partial summary judgment that the "good faith reliance defense" is not available to Lakeview. Lakeview's cross-motion on this defense is directed to Kirksey only.

The good faith reliance defense is found at 29 U.S.C. § 259.[11] It is an objective test that completely bars actions for violations of the overtime provisions of the FLSA, if the employer establishes "that the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative interpretation by a designated agency." Cole v. Farm Fresh Poultry, Inc., 824 F.2d 923, 926 (11th Cir.1987). Further, the written administrative interpretation "must provide a clear answer to the particular situation." Id. at 928.

Lakeview cannot prevail on summary judgment because it cannot demonstrate, as a matter of law, conformity with or reliance on written administrative interpretations. The

---

[11] Section 259 of Title 29 of the United States Code provides:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259.

Case No. 3:06cv378/MCR/MD

court has reviewed two Wage and Hour letters identified by Lakeview, which are the only administrative interpretations Lakeview asserts it has relied upon in good faith. Op. Letter from Dept. of Labor, Wage and Hour Div. (Jan. 24, 2001), 2001 WL 1558756; Op. Letter from Dept. of Labor, Wage and Hour Div., FLSA2005-50 (Nov. 4, 2005), 2005 WL 3308621. Neither letter appears to provide a "clear answer" as to the exemption status of plaintiff Kirksey, and thus summary judgment is unavailable.

The 2001 letter interprets the professional exemption applicable to employees whose title is Social Caseworker II. These employees were required "to have a master's degree in social work or human behavioral science, or to have a bachelor's degree with a major in human behavioral science, together with one year of professional caseworker experience acquired after the degree in a public or private social services agency." Lakeview's written educational requirement for the FSC position, which Kirksey held, did not meet this standard. The job description for the FSC position states that the minimum educational requirement is a "[b]achelor's degree from an accredited college or university in social services or related field." Doc. 108-5. It is not clear from the record, however, which majors qualify as "social services" or "related fields."[12] Further, evidence has been introduced showing that, whatever Lakeview's written requirement, Lakeview hired people with degrees far outside the "social services" field.[13] In summary, the record shows a

---

[12] David Barrera ("Barrera"), currently Lakeview's employment, compensation, and benefits director, conceded in his deposition that Lakeview has no written policy explaining what constitutes a "social services" degree and that he was not aware of any college or university which awarded a degree in "social services." (Barrera Dep., doc. 108-3, at 15, 20-21.) Barrera further testified that degrees in psychology, social work, sociology, and criminal justice would constitute "social services" degrees, but then explained that whether degrees in these areas would qualify depended on the specific courses the individual had taken. Id. at 16. In fact, Barrera stated that an individual with a bachelor's degree in any field could be employed as an FSC so long as they had the relevant background, experience, and course work and that a degree in a "related field" so long as the individual had the relevant course work. Id. at 16-17, 22. Barrera explained that relevant course work included classes in "[h]uman behavior, child development family intervention techniques, diagnostic measures of therapeutic techniques such as social work, psychology, sociology . . . ." Id. at 19. Barrera, however, stated that there was no particular requirement as to the number of classes or credits in these areas necessary to fulfil the requirements to be employed as an FSC. Id. at 22.

[13] The record also reveals that defendant employed individuals with degrees in such fields as "Communications/Public Relations," "English (with a minor in Sociology)," "African American Studies," "Math/Science," "Management," "Communications & Business Administration," and "French Education." See docs. 109-3, 109-4. Further, defendant considered courses such as "Introduction to Religion," "Public Affairs in Government," and "Introduction to Public Administration," as relevant course work. See id. In addition, in

dispute of material fact as to the educational requirements that Lakeview maintained for the FSC position.  Therefore, the court is unable to conclude as a matter of law that Lakeview tailored its educational requirements so as to rely on the 2001 Wage and Hour letter, and thus cannot grant summary judgment to Lakeview on the good faith defense as to this letter.

The 2005 letter actually found employees whose sole educational criterion was "a bachelor's degree in social sciences" not to be exempt under the professional exemption. Lakeview acknowledges that the letter was adverse to the employer but argues that the letter prompted it to "determine that a social worker's position that required education and degrees similar [to] those at Lakeview was exempt."  Because there can be no reliance on the 2005 letter, summary judgment to Lakeview as to this letter cannot be granted.

The court also finds insufficient evidence in the record supporting plaintiffs' motion for partial summary judgment against Lakeview as to the good faith reliance defense. Thus, as to this issue, the court makes no finding, and any application of the defense is reserved for trial.

Lakeview also seeks summary judgment on the issue of liquidated damages pursuant to 29 U.S.C. § 260, as to plaintiff Kirksey only.  That statute grants the court, "in its sound discretion," the power to "award no liquidated damages or award any amount" up to the amount owed under the FLSA.  In order to qualify, the employer must "show[ ] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.  29 U.S.C. § 260.  Because the court has found that Lakeview cannot establish its good faith as a matter of law, it would be premature to address

---

listing employees' relevant course work, defendant describes the classes not solely as related to "Social Services" but as being in "Social Services/Science Related Studies" or as "specialized courses in the social science field of study."  See docs. 109-2 and 174-2. Additionally, defendant hired a number of FSCs without first obtaining the applicant's transcript and thus defendant had no information on these employee's relevant course work at the time of their employment. See doc. 174-2. Finally, Sandra Whitaker, who currently serves as defendant's vice-president of corporate development and has also served as director of human resources, stated in her deposition and again in her affidavit that individuals did not need to have a social services degree or a degree in a related field to receive training to meet the requirements of any job at Lakeview. Whitaker Dep. at 60, doc. 108-2; Whitaker Aff. at 3, doc. 175-2.

Case No. 3:06cv378/MCR/MD

liquidated damages at this time. Further, because the question of liability is reserved for trial, if Kirksey is found to be an exempt employee, Lakeview would not be subject to liquidated damages as to her. Therefore, any finding as to the application of § 260 would be premature at this time. See, e.g., Cusumano v. Maquipan Int'l., Inc., 390 F.Supp. 1216, 1222-23 (M.D.Fla. 2005); Hunter v. Sprint Corp., 453 F.Supp.2d 44, 62-63 (D.D.C. 2006).

Lakeview also argues that Kirksey cannot prove a willful violation of the FLSA that would result in applying the FLSA's three-year statute of limitations to her claim. In most cases the statute of limitations for claims seeking unpaid overtime compensation under the FLSA is two years. If the cause of action arises "out of a willful violation," however, the statute of limitations is extended to three years. 29 U.S.C. § 255(a). To establish a willful violation "the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162-63 (11th Cir. 2008) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988)). An employer who "acts unreasonably but not recklessly" is subject only to the two-year statute of limitations. Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1324 (11th Cir. 2007).

The court finds that there is insufficient evidence in the record to conclude as a matter of law that a violation of the FLSA, if any occurred, was willful. Indeed, as liability has not yet been established this issue is premature. Prickett v. DeKalb County, 276 F.Supp.2d 1265, 1271 (N.D.Ga. 2003), rev'd on other grounds, 349 F.3d 1249 (11th Cir. 2003).

### III. Measure of Damages

Lakeview has also filed a motion for partial summary judgment in which it asks the court to rule on the applicable method for computing damages in the event that plaintiffs are non-exempt. The parties differ on the applicable method, and summary judgment is not appropriate at this time.

An employer who violates the FLSA is liable to the employee in the amount of her unpaid overtime compensation. 29 U.S.C. § 216(b). Overtime compensation is to be paid

at a rate not less than one and one-half times the employee's regular rate of pay. 29 U.S.C. § 207(a). Under the act, the "regular rate" is an hourly amount. 29 C.F.R. § 778.109. If an employer compensates its employees on a basis other than hourly rate, the employee's regular rate must be computed. Id. This is typically determined "by dividing . . . total remuneration for employment . . . in any workweek by the total number of hours actually worked . . . in that workweek." Id.

The regulations provide examples of how to compute the regular rate. Generally, for an employee paid on a weekly salary basis, the regular rate "is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a); Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 (11th Cir. 2008). When a salary employee is paid for periods longer than a week, the salary must be reduced to its workweek equivalent, and then the regular rate is computed as if the salary were paid on a weekly basis. § 778.113(b). When a salary employee works hours that fluctuate from week to week, the employer may pay a fixed amount as straight pay for whatever number of hours he is called upon to work; this is known as the "fluctuating workweek" method. § 778.114(a). This method may only be used, however, so long as "(1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work; (2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked; (3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is greatest; and (4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay." Davis v. Friendly Exp., Inc., 2003 WL 21488682, at *1 (11th Cir. 2003).

In this case, plaintiffs were salaried employees paid on a bi-weekly basis. Lakeview contends that plaintiffs were paid their salary regardless of how many hours they worked in a given week. Lakeview argues that, if any overtime compensation is in fact due, plaintiffs' regular rate must be computed by dividing plaintiffs' weekly salary by the total number of hours each plaintiff worked in a given week. Plaintiffs contend that this method

of computation would undercompensate them for overtime because the divisor in this equation would always exceed 40 hours in any week where overtime was worked, thus reducing their regular rate. They argue that there is ample evidence to show that they were hired on the understanding that they were to be paid on a forty-hour regular workweek. Plaintiffs have submitted payroll records and job offer letters with evidence that tends to support this claim.

The court finds that plaintiffs have come forward with evidence sufficient to create a genuine dispute of material fact as to a necessary element of the fluctuating workweek test set out above. Thus granting partial summary judgment in Lakeview's favor is not appropriate.

**Conclusion**

For the reasons given above, the court finds that neither party is entitled to summary judgment or partial summary judgment in its favor and thus that all of the pending motions should be denied.[14]

Accordingly, it is hereby ORDERED:

1.     Plaintiffs' motion for partial summary judgment on the issues of defendant's liability and affirmative defenses (doc. 105) is DENIED.

2.     Defendant's motions for summary judgment and partial summary judgment (docs. 121-127, 185) are DENIED.

DONE AND ORDERED this 30th day of September, 2008.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[14] While plaintiffs are not entitled to partial summary judgment, as previously discussed the court nevertheless finds as a matter of law that plaintiffs are not subject to the administrative exemption set forth in 29 C.F.R. § 541.200 et seq.

Case No. 3:06cv378/MCR/MD